# EXHIBIT B

# HAWKINS PARNELL
## THACKSTON & YOUNG LLP

303 Peachtree Street NE
Suite 4000
Atlanta, GA 30308-3243
P: 404.614.7400
F: 404.614.7500
hptylaw.com

ATTORNEYS AT LAW     Atlanta   Austin   Charleston   Dallas   Los Angeles   Napa   New York   St. Louis   San Francisco

404-614-7664
chilton@hptylaw.com

December 15, 2015

Via Electronic Mail (kwamethompson@outlook.com) and Hand Delivery

Kwame T. Thompson, Esq.
Kwame T. Thompson, P.C.
44 Broad Street, Suite 600
Atlanta, Georgia 30303

Re:   Sole v. Tyler Perry Studios et. al;

Dear Kwame:

As you recall, during the deposition of Brett Hendrix on December 2, 2015, you attempted to offer and examine Mr. Hendrix on a number of documents requested by Defendants in written discovery, but not previously produced by Plaintiff. Most notably, near the end of Mr. Hendrix's deposition, and following previous on record requests by the undersigned that you produce all documents you intended to use at the deposition, you attempted to offer an electronic communication from "Al Be Reyes," as well as a four page "Sworn Statement" from Mr. Reyes dated June 6, 2015. A copy of these documents are affixed hereto as Exhibit "A."

Mr. Reyes had not previously been disclosed by Plaintiff as a potential witness and was not among the 44 witness names included in Plaintiff's Initial Disclosures filed July 16, 2015. Defendants objected to this surprise exhibit and you attempted to withdraw the exhibit. You did not examine Mr. Hendrix on the document. Disclosure of Mr. Reyes as a witness, along with his "Sworn Statement" are clearly within the scope of Defendant's discovery requests (outlined in Exhibit "B"), along with the Court's mandatory Initial Disclosures.

As referenced above, the date of the "Sworn Statement" of Mr. Reyes is prior to the date you served your Initial Disclosures and prior to the date that Plaintiff responded to Defendant's discovery requests. Please provide a written explanation regarding Mr. Reyes and his "Sworn Statement" which addresses the following:

Kwame T. Thompson, Esq.
December 15, 2015
Page 2

(1) The date that your client became aware of Mr. Reyes and his status as a potential witness in this matter;

(2) The date that you or any lawyer or employee at your law firm became aware that Mr. Reyes was a potential witness in this matter;

(3) The date that your client came into possession of the "Sworn Statement" of Mr. Reyes;

(4) The date that you or any lawyer or employee at your law firm law firm came into possession of the "Sworn Statement" of Mr. Reyes.

During Mr. Sole's deposition, which took place on December 1, 2015, Mr. Sole also identified a "Response" to the internet posting of Mr. Perry, which Mr. Sole claims he drafted, posted on the Internet and then removed from the Internet. Mr. Sole testified that he had the document in his possession. This document has not been produced by Plaintiff to date, and is clearly within the scope of Defendant's previously served discovery requests.

Further, based on the revelation that Mr. Sole located the Reyes documents and the "Sworn Statement" of Reyes on his computer, Defendants requested that Plaintiff produced his computer and hard drive for inspection. You agreed to comply with this request. We attached Defendant TPS's Second Request for Production for Mr. Sole's computer, his hard drive, related devices and storage devices (See Exhibit "C", served herewith).

Defendants are prejudiced by Plaintiff's failure to identify Mr. Reyes as a potential witness, as well as the failure to produce the Sworn Statement of Reyes and the electronic communications of Reyes until the end of Mr. Hendrix's deposition. Defendants are also prejudiced by Mr. Sole's failure to produce the purported "Response" of Mr. Sole to Mr. Perry's internet post. Defendants were unable to examine Mr. Sole on any of the facts contained in the "Sworn Statement" of Mr. Reyes or his purported "Response" to Mr. Perry's internet posting.

A review of documents produced by Plaintiff also reveals that Mr. Sole still has not produced his tax returns and related documents in response to Request for Production No. 11 (See Exhibit B affixed hereto). Please immediately provide Mr. Sole's tax returns. We were unable to conclude Mr. Sole's deposition based on his failure to comply with discovery. Further, based on the additional documents produced by Plaintiff during Mr. Hendrix's deposition referenced herein, we are unable to reconvene and complete Mr. Sole deposition until we receive the responses to the outstanding requests as set forth herein.

Kwame T. Thompson, Esq.
December 15, 2015
Page 3

    Time is of the essence based on the current Scheduling Order in place. Thank you for your prompt attention to these matters.

                                                 Sincerely,

                                        **HAWKINS PARNELL
                                          THACKSTON & YOUNG** LLP

                                          H. Eric Hilton

cc:    Matthew Boyd, Esq.
        Mr. Brett Hendrix

# EXHIBIT A



### Al Be Reyes



**Al Be Reyes**



**Al Be Reyes**

Hello my name is Al Be Reyes, I was an employee at Tyler perry studios right before you u were under the supervision of Brett Hendrix. I was fired by him for slightly the same reasons, and no one was willing to listen to my story. So I would really like to talk with u if possible and even am willing to testify on ur behalf if needed. Please feel free to hit me up.

Yesterday at 6:36am · Sent from Mobile





I started working for Tyler Perry Studio's in May of 2014. I learned about an opening for a Production Assistant in the Set Decorating Department at Tyler Perry Studios from a friend of mine Ryan Baker. Mr. Baker had seen the position posted on Facebook and told me to apply. I quickly responded to the posting via email by reaching out to the lead Production Assistant in the Set Decorating department, Brett Hendrix. After Mr. Hendrix received my email he replied back to me the next day requesting I interview with him via phone. Upon completion of the interview I was offered the position. I assumed my position as a PA in the set decorating department the day after Memorial Day under the direction of Mr. Hendrix.

Mr. Hendrix informed me that my length of employment was not was not assured. However, the show that I would be working on would be in production for at least six-eight weeks. During my first week I expressed interest in learning any additional skill sets within my department as well as other departments. I was advised and encouraged that if I seemed active and engaged I could gain enough knowledge to further myself and possibly remain employed at the studio.

I was very excited for the opportunity to work for TPS and I had expectations that my hard work ethic and skills would help me to develop while employed. However, after a few days it was clear that favoritism and mental anguish where going to play a large part in my employment at the studio. Mr. Hendrix was very aware of my mode of transportation when I was hired and in spite of this he favored Mike Morris over myself concerning our schedules. I was required to stay late while Mr. Morris was granted the option of leaving earlier. While it was not that great of an issue, this act by Mr. Hendrix set the tone for my time at the studio and I was made to feel as a crazed stalker of disposable value.

Because of my enthusiasm I was asked a couple of times to assist in other departments. I'd like to think of myself as a passionate person, I attempted to be as friendly and courteous as possible. Considering that I was a new employee, I saw every opportunity as a way to make a good enough impression to gain the attention of my superiors and other coworkers. I spoke to everyone I came into contact with, and even attempted to make outside connections via social media. Mr. Hendrix however, when notified of my socialization, expressed disapproval and told me that I was presenting myself as nothing more than an opportunist. I also wanted to learn more about being a Set Decorator at the studio but Mr. Hendrix dismissed my inquiry as a frivolous attempt at making an impression just for me.

After a few weeks tenure I was told by Mr. Hendrix's superiors as well as other persons of authority that the best way to learn as much as possible is to introduce myself to people and to express interest in other upcoming projects. I had a brief encounter with Production Manager Patrick Sheedy, I sent him my resume per his request and he told me that other projects are always up and coming and that he would keep me in mind. Mr. Sheedy also suggested I introduced myself to Mark Swinton a producer at Tyler Perry Studios. After speaking with Mr. Swinton he encouraged me to forward my resume to his assistants and when they had any upcoming projects that fit my experience I would be contacted.

Occasionally I would spend my lunch break in the cafeteria socializing with others as a way to gain knowledge and make connections. Nevertheless these actions were frown on by Mr. Hendrix and he instructed Toni Hall, a buyer in the Set Decorating department to "talk" with me. Ms. Hall told me that

Mr. Hendrix advised her to talk to me, because we worked closely together, and to inform me on how I should conduct myself while at the studio. In so many words Ms. Hall expressed how Mr. Hendrix was displeased with my socializing and attempts at advancing within the studio. I approached Mr. Hendrix that same day (with this being our second "ONE on ONE" meeting) to inquire why he sent Ms. Hall to speak with me and not come speak with me himself. He told me exactly what Ms. Hall had said, he suggested Ms. Hall speak with me because we worked closely together and he didn't want to seem like he was coming down on me. Mr. Hendrix would tell me how he kept hearing things from other people, and how people perceived me. Mr. Hendrix did not reprimand me for things he saw with his own eyes or heard with his own ear, instead he chastised me about "things he'd heard from other people". I tried to explain that the things Mr. Hendrix was hearing where being falsified and the information that Mr. Hendrix was receiving was misguided. Feeling uncomfortable, I tried to keep the conversations between Mr. Hendrix and myself short and unresponsive because I didn't want to seem as an insubordinate. Mr. Hendrix would constantly remind me that my time at Tyler Perry Studios was temporary and that everything I do or didn't do would determine my future at the studios.

During my down time and lunch breaks I would visit Jerome Allen, a friend of mine who worked in "Actors Row" as a hair stylist to the actors and actresses. Although I would initially frequent the area in my downtime, I didn't spend much time per visit. After Mr. Hendrix got notice of my visits, he informed me that I was not allowed over in Actors row while working, nor was I allowed to fraternize with the actors or actresses. I informed Mr. Hendrix that I only went to the area on breaks and during lunches and he rebutted me saying that other employees where complaining about my presence in the area. After that encounter I reduced my visits to actor's row as an attempt to show compliance with Mr. Hendrix's requirements. I made it a point to only speak to my friend Jerome during lunch or at the end of the day when I was leaving. Because I had made frequent visits to Actors row, I became familiar with some of the actors and actresses; one in particular was April Parker. We developed a friendly/ platonic relationship and would socialize whenever we would come in contact.

During a day of filming my close friend and her son who I view as a sister and nephew were selected to be extra's on the show in which I was working. Upon their arrival I introduced my nephew to a few of the crew me members I had become acquainted with as he walked through the building to his destination. Later in the day I took a picture with my nephew and posted it to my Facebook and Instagram. I was informed of the "No photography policy" with in my new hire paperwork. My understanding of the policy, however, exclusively referred to photos of the facility and of the set. The photo I took with my nephew was strictly of him and me with very little background in the back. Mr. Hendrix became aware of this because he had access to view my Facebook and Instagram page at that time.

One afternoon April and I were in the court yard outside in the studio and I informed her that it was my last week working there. April then informed me that it was her last day and that she would be wrapping filming and requested my phone number so that we could keep in touch. She invited me to actor's row so that she could get her phone, Mr. Hendrix was passing by as that happened and gave me a considerable self-righteous look and muttered "Where are you going?", I informed him that April asked me to come with her to actors row for a second. Later in the day when I returned to my desk in the set

no authority to fire me. This sparked my interest so I started to email and call other superiors that I had spoken with while employed at Tyler Perry Studios, The only one that answered and replied was Patrick Sheedy who informed me he wasn't even aware of any issues, and didn't know I was terminated. When I explained my side of the story to him and the situation with Mr. Hendrix he told me to relax, I was not fired and that in August when the show starts up again I would return.

After that conversation, I continued to receive random phone calls from a few employees, some of them confused as to what happened, and other informing me about what Mr. Hendrix had did and the same as Ceret did.

I worked at Tyler Perry Studios from May 27th 2014 till July 11th. I was told by Brett Hendrix via email at the beginning of the week that my final week was that week due to the wrapping of the show. I later found out that I was the only one from the Set Decorating department let go. Again all decisions were made by Brett Hendrix. I eventually got in touch with the Set Decorator Dennis Donegan, he told me he only thought I was gone because the show was wrapping. He was unaware that I was fired and said he was very pleased with my work, and apologized for what had happened. Mr. Donegan also stated he would give me a referral if needed.

This is my sworn statement.

_A. Reyes_  
Al Be Reyes

06/05/2015  
Date

# EXHIBIT B

EXHIBIT "B"

Interrogatory No. 7:

Identify and describe any statements or reports from any person, whether oral, written, transcribed, or recorded or in any other form or fashion, that you are aware of, or which were obtained by you, your agents, or other representatives relating to the allegations made in your Complaint. Your answer should include, at a minimum, the individual from whom the statement was taken, the date of each statement or report, the substance of each such statement or report, and the custodian of each such statement or report.

Interrogatory No. 8:

Identify and describe any conversation(s) regarding this action or the allegations in your Complaint you have had with any of the Defendants, Defendant's current or past employee(s) or co-worker(s) or any witness(es) to this action. Your answer should include, at a minimum, the date of each conversation, the participants in each conversation, and your understanding of what was said by each participant in each conversation.

Request for Production No. 4:

Produce any and all writings, reports, interviews, e-mails (whether written or electronic), memos, notes, personal notes, documents or summaries concerning the following persons, issues, or events:

(a) harassing or otherwise unwanted conduct that you received from any person or entity at any point during your employment with And Action LLC and/or Tyler Perry Studios, LLC.

(b) all allegations, reports, assertions, or complaints of misconduct against any of the Defendants.

Request for Production No. 5:

Produce all documents, recordings or materials that refer to, memorialize or evidence the conduct of which you contend you were a victim.

Request for Production No. 7:

Produce all correspondence, memoranda, notes, or other written or electronic documents showing any communication between you and Brett Hendrix or any other employees or representatives of And Action LLC and/or Tyler Perry Studios, LLC which specifically reference any of the conduct that you allege in your Complaint.

Request for Production No. 11:

Produce all documents that refer or relate to or otherwise evidence your income from 2005 to the present, regardless of the source of the income. This shall include, but is not limited to, all local, state and federal income tax returns and supporting documents for the years 2005 through the present.

Request for Production No. 14:

Produce any e-mails, on-line journals, blogs, posts on social media sites (including but not limited to posts on MySpace, Facebook, Instagram, Twitter, and/or Linked-In) or any other electronic narrative describing, referring to, or otherwise relating to any of the allegations set forth in your complaint or your employment with And Action, LLC and/or Tyler Perry Studios, LLC.

Request for Production No. 15:

Produce copies of any e-mails or other written or electronic correspondence that you or your representatives have sent to any individual, including but not limited to the current or former employees of any of the Defendants, regarding this case or any of the allegations that you make in your Complaint.

Request for Production No. 19:

Produce all documents containing any statement, observation, summary or report of any kind by or concerning any person having direct or indirect knowledge of any matter alleged in your Complaint.

Request to Produce No. 28:

To the extent not already produced, produce a copy of every e-mail, Facebook message, internet post, private message, or any similar type of communication that describes, refers, or relates to the allegations contained in the Complaint.

# EXHIBIT C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOSHUA SOLE,<br><br>    Plaintiff,<br><br>V.<br><br>TYLER PERRY, TYLER PERRY STUDIOS, LLC and BRETT HENDRIX,<br><br>    Defendants. | CIVIL ACTION FILE NO.<br><br>1:15-CV-1700-LMM |

## DEFENDANTS TYLER PERRY STUDIOS, LLC'S SECOND REQUEST FOR PRODUCTION TO PLAINTIFF

Pursuant to Rule 34 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Defendant Tyler Perry Studios, LLC ("Defendant") submits its Request for Production of Documents ("Requests") to Plaintiff Joshua Sole ("Sole"). Responses to the Requests shall be served on Matthew A. Boyd and H. Eric Hilton, at the law offices of Hawkins Parnell Thackston & Young LLP, 303 Peachtree Street, N.E., Suite 4000, Atlanta, Georgia 30308-3243, within thirty (30) days from the date of service of this pleading.

### INSTRUCTIONS

NOTE A: When used in these requests and definitions, the terms "you" or "Plaintiff", or any synonym thereof, is intended to and shall embrace and include,

in addition to said Plaintiff, counsel for Plaintiff and all agents, servants, employees, representatives, investigators and other persons or agencies who are in possession of or may have obtained information on behalf of Plaintiff.

NOTE B: Throughout these requests, wherever Plaintiff is requested to identify a communication of any type and such communication was oral, the following information should be furnished:

1. By whom it was made, and to whom;

2. The date upon which it was made;

3. Who else was present when it was made; and

4. Whether it was recorded or described in any writing of any type. If so, identify each such writing in the manner indicated in Note C below.

NOTE C: Whenever Plaintiff is requested to identify any communication, memorandum or record of any type, and such communication was written, the following information should be furnished:

1. Its nature; for example, whether it is a letter, memorandum, etc.; and

2. The date of the communication;

3. The method of delivery of the communication;

4. By whom it was made and to whom addressed, and if copies were sent to any person, to whom such copies were sent; and

5. See also, Note F below.

NOTED: "person" includes not only natural persons, but also corporations, companies, firms, partnerships, associations, joint ventures and other entities.

NOTE E: "document" includes:

1. All written or electronic communications, letters, correspondence, memoranda, records, reports, notes, drafts, minutes of meetings, books, papers, magazines, newspaper articles, brochures, pamphlets, literature, advertising, computations, tabulations, computer printouts, bills, statements, mvmces, accounts, checks, tape recordings, photostats, motion pictures, slides, photographs, sketches, charts, graphs, video recordings and other similar objects, or any other written, printed, recorded or video matter or tangible thing on which any words or phrases are fixed or conveyed;

2. Copies of such documents upon which appear any initialing, notation, or handwriting of any kind not appearing on the original;

3. Such documents, whether they were prepared by Plaintiff or Plaintiffs agents, representatives or attorneys, for their own use or transmittal in any manner, or were received by any means by Plaintiff; and

4. Such documents, wherever located, whether in the files of any agent, attorney or representative of Plaintiff, or in any file in the possession or direction or control of Plaintiff.

NOTE F: Where Plaintiff is asked to identify a document, designate the type of document (i.e., letter, report, book, brochure, etc.) and state:

1. Information sufficient to enable defendant to identify the document, including the name and address of the addressee or addressees, the name and address of the author or signor, and the name and address of persons copied with the documents;

2. The location of the document; and

3. Identify (see Note H below) the person(s) with custody and control of the document.

NOTE G: Where Plaintiff is asked to identify a document which is deemed by the Plaintiff to be properly withheld from subsequent production for inspection or copying on the ground of privilege, identify the document by stating the title or subject heading, date, author, address and persons copied, and state the privilege asserted.

NOTE H: Where Plaintiff is asked to identify a person, state the person's full name, the present or last known residence and business addresses, and present or last known phone numbers for the person.

4

NOTE I: These requests shall be deemed continuing and supplemental answers shall be required if the Plaintiff, directly or indirectly, obtains further information of the nature sought herein between the time answers to the requests are served and the time of trial, pursuant to Fed. R. Civ. P. 26(e).

NOTE J: If you claim that any of the words and/or phrases used in these requests are vague, ambiguous or incapable of precise understanding, please be advised that counsel for Defendants is available for conference, either by telephone or in person, for the purposes of discussing and clarifying what is meant by each request.

## REQUESTS FOR PRODUCTION

1.

Please produce for inspection any and smart phones, hand held devices, computer devices, tablets, lap top computers, computer hard ware, computer software, drives, and storage devices utilized by Plaintiff Joshua Sole during the period from June 1, 2014, through the present.

This 15th day of December, 2015.

                                           **HAWKINS PARNELL THACKSTON & YOUNG** LLP

                                           /s/ *H. Eric Hilton*
                                           Matthew A. Boyd
                                           Georgia Bar No. 027645
                                           mboyd@hptylaw.com
                                           H. Eric Hilton
                                           Georgia Bar No. 355417
                                           ehilton@hptylaw.com
                                           303 Peachtree Street, N.E.
                                           Suite 4000
                                           Atlanta, Georgia 30308
                                           Telephone:  (404) 614-7400
                                           Facsimile:   (404) 614-7500

                                           *Counsel for Defendant*
                                           *Tyler Perry Studios LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOSHUA SOLE,<br><br>　　　Plaintiff,<br><br>v.<br><br>TYLER PERRY, TYLER PERRY STUDIOS, LLC and BRETT HENDRIX,<br><br>　　　Defendants. | CIVIL ACTION FILE NO.<br><br>1:15-CV-1700-LMM |

## CERTIFICATE OF SERVICE

This is to hereby certify that I have this day served the foregoing SECOND REQUEST FOR PRODUCTION TO PLAINTIFF JOSHUA SOLE via hand delivery, to the following attorney of record:

　　　Kwarne Thompson, Esq.
　　　Kwame Thompson, P.C.
　　　44 Broad Street, NW, Suite 600
　　　Atlanta, Georgia 30303-2329

This 15th day of December, 2015.

　　　　　　　　　　　　　　　/s/ H. Eric Hilton
　　　　　　　　　　　　　　　H. Eric Hilton
　　　　　　　　　　　　　　　Georgia Bar No. 355417

14

11245507v.1