# EXHIBIT "F"

Case 1:15-cv-01700-LMM   Document 37-8   Filed 01/15/16   Page 2 of 8

JOSHUA EDWARD SOLE, SR.                    November 30, 2015
SOLE vs. PERRY                                            29

```
 1   I'm dealing with it; but I don't ever --
 2              You know, no one's ever really sat down
 3   and wanted to go into detail to detail and why, who,
 4   what, any of that.
 5        Q.    All right.  Have you discussed this matter
 6   with anybody from the press?
 7        A.    No.
 8        Q.    Have you posted about it at any blogs or
 9   Facebook posts or any kind of social media
10   communication?
11        A.    About the event?
12        Q.    Anything related to it.  Yes.
13        A.    When the incident had happened and I
14   had --  I don't know if I seen it or somebody told me
15   that Mr. Perry had posted a Facebook kind of letter.
16   I drafted up a response letter and posted it to my
17   page; and then, you know, within maybe five or ten
18   minutes just took it off; and said, you know, I don't
19   want to fall into any of this.
20        Q.    Do you still have a copy of that?
21        A.    I would have to check.
22        Q.    Where would it be if you did have a copy?
23        A.    Saved to my computer is the only way.
24   Yeah.  Saved to my computer.
25        Q.    Do you still have the computer you had
```



```
 1   back in October 2014?
 2        A.    I do.
 3        Q.    And have you deleted anything from that
 4   computer related to the facts underlying this
 5   lawsuit?
 6        A.    Not like directly deleted, but I lost a
 7   large portion of my computer data.
 8        Q.    How did that occur?
 9        A.    I had bought a -- I guess it's an
10   external hard drive, so I backed up my computer,
11   'cause it was starting to build up my memory,
12   whatever.  Backed it up on to my hard drive.
13              And I don't know if my hard drive dropped
14   or how it got defective; but one day, I tried to plug
15   it up; and it just couldn't read anymore.
16        Q.    When did that occur?
17        A.    I don't know.
18        Q.    The last six months.  The last two months?
19        A.    Closer to like within the last year to 15
20   months.
21        Q.    Was it before October 30, 2014?
22        A.    No.  It was after.
23        Q.    It was after that.  All right.
24              Other than the one Facebook post you just
25   referenced, have you ever posted about this matter or
```



Case 1:15-cv-01700-LMM   Document 37-8   Filed 01/15/16   Page 4 of 8

JOSHUA EDWARD SOLE, SR.                                November 30, 2015
SOLE vs. PERRY                                                        31

```
 1   the facts underlying it as -- as you view them in
 2   social media?
 3       A.    No.
 4       Q.    Do you still have the external hard drive
 5   that you just referenced?
 6       A.    I believe so.
 7       Q.    Okay.  Again, we'd ask you to preserve
 8   that piece of equipment for purposes of this lawsuit.
 9       A.    If -- If I can find it.
10             (Discussion ensued off the record.)
11             MR. BOYD:  Okay.  And, Kwame, that was the
12        subject of a discovery request, so we need to
13        get that produced.  Even if Mr. Sole can't --
14             MR. THOMPSON:  Okay.  Uh-huh.
15             MR. BOYD:  -- bring it up himself, a
16        forensic examiner probably can.
17             MR. THOMPSON:  Okay.
18             MR. BOYD:  So we need to see that.
19             MR. THOMPSON:  Yes.
20       Q.    (By Mr. Boyd) All right.  All right.  Now
21   let's change gears a little bit.  You started working
22   on location at the Tyler Perry Studios on August 11,
23   2014, correct?
24       A.    Sounds about right.
25       Q.    Okay.  And when you started working at the
```



Case 1:15-cv-01700-LMM   Document 37-8   Filed 01/15/16   Page 5 of 8

JOSHUA EDWARD SOLE, SR.                    November 30, 2015
SOLE vs. PERRY
                                                        150

```
 1        Q.    Okay.  Meaning you heard it secondhand
 2   through somebody else?
 3        A.    No.  From the person.
 4        Q.    Who's the person?
 5        A.    The person who worked the job before me.
 6        Q.    And you -- you talked to that person
 7   personally?
 8        A.    I was contacted by that person.  Yes.
 9        Q.    Did you have a conversation with him?
10        A.    No.  The person gave me a lot of
11   information, and I just forwarded it on to my team.
12        Q.    Okay.  Let me back up.  When did you
13   have -- Okay.  Remind me the person's name again.
14        A.    I don't --  It was Albee was the name that
15   was used to correspond with me, so I don't know if
16   that's his name or how he was --
17        Q.    Okay.  And this Albee contacted you in
18   some way?
19        A.    Yes.
20        Q.    And how did he contact you?
21        A.    On Facebook.
22        Q.    All right.
23        A.    Yeah.
24        Q.    Did he send you a face -- a message on
25   Facebook?
```



Case 1:15-cv-01700-LMM   Document 37-8   Filed 01/15/16   Page 6 of 8

JOSHUA EDWARD SOLE, SR.                           November 30, 2015
SOLE vs. PERRY                                                  151

```
 1        A.   Yes.
 2        Q.   Okay.  What did the message say?
 3        A.   Hi.  I noticed -- I don't know -- I saw
 4   what's going on with you.  I want you to know that I
 5   went through a similar-type thing; and if you need me
 6   to talk to anyone or if you need someone's story, you
 7   know what I'm saying, or any type of -- I don't
 8   know -- corroboration or --
 9             You know, like it was more of him saying
10   this is what happened to me; and if that has anything
11   to do with what happened to you, then I'm here, as
12   needed.
13        Q.   When did you receive this message?
14        A.   I don't know.
15        Q.   Was it before of after your employment
16   ended?
17        A.   After.
18        Q.   Okay.  Was it before or after the lawsuit
19   was filed on your behalf?
20        A.   I don't know.
21        Q.   Did the message say that Mr. Hendrix had
22   sexually harassed this Albee person?
23        A.   I don't know if sexual harassment was
24   included in it.  I pretty much just -- Like I don't
25   even know if I read it for content.  I just reached
```



Case 1:15-cv-01700-LMM   Document 37-8   Filed 01/15/16   Page 7 of 8

JOSHUA EDWARD SOLE, SR.                    November 30, 2015
SOLE vs. PERRY                                          152

```
 1   out and said, hey, this person's trying to talk to me
 2   about the situation; and was told, okay, well, just
 3   give that to us; and I just left it.
 4        Q.    Give that to who?
 5        A.    My lawyer.
 6        Q.    Okay.  Did you keep a copy of that
 7   message?
 8        A.    I'm sure it's still on my Facebook.  I
 9   don't remember deleting it.
10        Q.    Okay.  Did you send -- Did you forward a
11   copy of that message to your attorney?
12        A.    Yes.  I don't -- I'm not sure it was by
13   forward, but I think -- I don't know if it was a
14   screen shot or a copy and paste, but it was passed
15   along.
16             MR. BOYD:  We've asked for all
17        communications.  Are you aware of this document.
18             MR. THOMPSON:  No.  I'm not, 'cause we
19        want to talk to him about it.  I know --
20             He mentioned that there was a Facebook
21        post, but I didn't know that it was still the --
22        in existence.
23             MR. BOYD:  Okay.  I mean, we need a copy
24        of that, obviously.
25             MR. THOMPSON:  Absolutely.  Uh-huh.
```



Case 1:15-cv-01700-LMM   Document 37-8   Filed 01/15/16   Page 8 of 8

JOSHUA EDWARD SOLE, SR.                    November 30, 2015
SOLE vs. PERRY                                          153

```
 1              MR. BOYD:  Now, I mean, just there's
 2      several documents that are still missing, so
 3      we're going to need to hold the deposition open.
 4              MR. THOMPSON:  Uh-huh.
 5              MR. BOYD:  -- pending receipt of some of
 6      those.
 7      Q.      (By Mr. Boyd)  All right.  Do you have any
 8   personal knowledge as to who made the decision to
 9   terminate this Albee person?
10      A.      Besides Brett telling me that he did it --
11      Q.      All right.
12      A.      -- and other people saying that Brett did
13   it, no.
14      Q.      Okay.  But that's the only source of your
15   information is what you claim Brett said?
16      A.      Yes.
17      Q.      Okay. All right.  Are you aware --  Okay.
18   Are you aware of any other complaint made against Mr.
19   Hendrix for any other employer or related to any
20   other employer?
21      A.      Not that I know of.
22      Q.      Okay.  Do you have any information that
23   any of Mr. Hendrix's supervisors at And Action had
24   knowledge that he'd ever been accused of sexually
25   harassing anyone?
```

